UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THE NAVIGATORS<br>    3820 N. 30th Street<br>    Colorado Springs, CO 80904<br><br>        Plaintiff,<br><br>    -v-<br><br>LINDA M. SPRINGER<br>in her official capacity as<br>Director of the United States Office<br> of Personnel Management<br>    1900 E Street, N.W.<br>    Washington, D.C. 20415-0001,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No._____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**I. STATEMENT OF FACTS**

**A. The Combined Federal Campaign**

The Combined Federal Campaign ("CFC") was established by President Kennedy in 1961 as the exclusive means for federal employees[1] to make charitable contributions at their places of work. See 5 CFR § 950.102 (a); *Planned Parenthood of Metropolitan Washington, D.C. v. Horner*, 691 F. Supp. 449 (D.D.C. 1988). In 2005, federal civilian and postal employees and military personnel were provided the opportunity to contribute to the charities of their choice. Federal employees and military personnel donated approximately $268.5 million to the

---

[1] Armed forces personnel and Postal Service employees as well as civil servants participate in the CFC, which is conducted annually.

2005 CFC. See OPM News Release, April 21, 2006.

The Director of the Office of Personnel Management ("Director") supervises the CFC. 5 CFR § 950.102 (c). The Director renders all final decisions regarding disputes. The Director establishes and maintains an official list of local CFCs and the geographical areas they cover. The Director also designates Local Federal Coordinating Committees ("LFCCs") which conduct and supervise the local CFC in particular communities. See 5 CFR § 950.103 (a) and (b); *Planned Parenthood of Metropolitan Washington, D.C. v. Horner*, 691 F. Supp. 449 (D.D.C. 1988).

The LFCCs each year establish a 6 week period during which federal employees may be solicited for charitable contributions. The solicitations may not begin before September 1 and may not extend beyond December 15. Contributions are made either directly to the CFC or are withheld from participating employees' paychecks. 5 CFR § 950.103.

Each year, the Director compiles a list of charities eligible to participate nationally in all local campaigns ("National List"). Each LFCC is required to include the National List charities in the CFC brochures prepared and distributed to eligible federal employees in accordance with CFC regulations. Upon receiving the brochure, federal employees receive a pledge card and identify charities they wish to support. 5 CFR §§950.105, 950.201.

A charitable organization wishing to be included in the CFC applies annually to the Director. An organization seeking inclusion on the National List, *inter alia*, must certify: a) it provides services or benefits in at least 15 states or a foreign country over the three year period immediately preceding the campaign year involved; and b) it is recognized by the Internal Revenue Service as a tax-exempt organization under section 501(c)(3) of the Internal Revenue

Code of 1986 ("Code").  5 CFR §950.202.[2]

The Director is required to issue the National List to all LFCCs each year. As noted in Exhibit E to the complaint, the Director intends to distribute the National List on or about July 31, 2003 *via* display on the OPM web site.  The web site will contain the names of and information about charities included in the National List.

To the National List, LFCCs are permitted to add local charities, in accord with a local application process. The LFCCs do not have discretion to remove a National List charity from the CFC. The decision by the Director is final as to which charities are admitted to the CFC as National List charities.

On or about August 1, 2003, it is anticipated the LFCCs will commence the printing of brochures for distribution to federal employees[3]. These brochures must contain the names of and information about National List charities. (Local charities, *but not National List charities*, will vary from brochure to brochure, depending on the region covered by the local federal campaign.)

**B.  The Navigators and Its Application for Inclusion in the 2006 CFC**

---

[2] Section 950.202 states that organizations seeking national list eligibility must "(a) Certify that it [sic] provides or conducts real services, benefits, assistance, or program activities, in 15 or more different states or a foreign country over the 3 year period immediately preceding the start of the year involved. The requirement cannot be met on the sole basis of services provided through an "800" telephone number or by sending materials via the U.S. Postal Service or a combination thereof. A schedule listing those states (minimum 15) or the foreign countries (minimum 1) where the program activities have been provided and a detailed description of the activities in each state or foreign country must be included with the application. While it is not expected that an organization maintain an office in each state or foreign country, a clear showing must be made of the actual services, benefits, assistance or activities provided in each state or foreign country."

[3] The exact printing dates will vary somewhat from one local LFCC to another.

The Navigators is a non-profit, charitable corporation exempt from federal income taxes as an organization described in Internal Revenue Code sec. 501(c)(3). The Navigators provides faith-based services to U.S. military personnel and their families throughout the world. The organization also works to strengthen the personal and spiritual lives of military personnel and their families through discipleship, Bible studies, leader development, conferences, counseling and group activities.

The Navigators is a member of Christian Service Charities, a non-profit, tax-exempt organization. Christian Service Charities is a national federation, approved by the Office of Personnel Management ("OPM"), to participate in the 2006 CFC on behalf of its member organizations. (Complaint, ¶¶ 7-9.) See, 5 CFR §950.301 *et seq.* On or about January 31, 2006, in advance of the 2006 CFC application deadline, Christian Services Charities submitted its list of eligible member organizations certified for participation in the 2006 CFC. The Navigators was included in the list and authorized Christian Service Charities to represent it before OPM in connection with the 2006 CFC. (Complaint, ¶ 8)[4]

In response to a request from defendant, Christian Service Charities submitted a copy of The Navigators' 2006 CFC application on the required OPM form, to which was appended The Navigators' Attachment A (as well as miscellaneous other attachments not at issue in this action) that described The Navigators' services, benefits, assistance and program activities undertaken throughout the United States and abroad.

---

[4]Approved national federations such as Christian Service Charities, eligible to participate in the CFC on behalf of their member organizations, submit annually to OPM lists of their members eligible to participate in a particular CFC. The individual members do not submit formal applications to participate in the particular CFC unless OPM so requests.

The Navigators described various services it provided and the number of individuals to whom it provided services. These services included: counseling, education/training, mentoring, parenting support for mothers, professional mentoring, recreation and religious missions. These services were provided to over 27,000 individuals in the United States and 5,000 individuals abroad. All thirty-four states and thirteen foreign countries were listed in Attachment A. (Complaint, ¶¶ 13-15.)

On May 4, 2006, the Defendant denied The Navigators' application for inclusion in the 2006 CFC, stating, in pertinent part: "did not include sufficient information to support a claim that the organization provided or conducted real services, benefits, assistance, or program activities in 15 or more different states of a foreign country over the three-year period immediately preceding January 2006."

The Navigators appealed the denial on May 8, 2006, but the appeal was sustained by letter on July 21, 2006. No explanation was given for the result. Counsel for the Navigators attempted to meet with the Deputy Director of OPM but was rebuffed on July 25, 2006. The notice of denial of the appeal is the final administrative action for the 2006 CFC.[5]

## II. THE NAVIGATORS IS ENTITLED TO INJUNCTIVE RELIEF

### A. Standards For Granting Preliminary Injunctive Relief

The Navigators is entitled to preliminary injunctive relief if it demonstrates (I) a substantial likelihood of success on the merits; (ii) a substantial threat of irreparable injury if the requested relief is not granted; (iii) no other parties will be harmed if temporary relief is granted;

---

[5] 5 CFR §§ 950.102(c) and 950.205(f) state "[t]he Director's decision is final for administrative purposes."

and (iv) issuance of the injunction will serve the public interest. *Virginia Petroleum Jobbers Ass'n v. Federal Power Commission*, 259 F. 2d 921, 925 (D.C.Cir. 1958); *Washington Metropolitan Area Transit Comm'n v. Holiday Tours*, 559 F. 2d 841, 843 (D.C. Cir. 1977); *Serono Laboratories, Inc. v. Shalala*, 158 F.3d 1313 (D.C. Cir. 1998).

The Navigators is not required to prevail on each of these factors. Under *Holiday Tours*, these factors must be viewed as a continuum, with the presence of more than one factor compensating for less of another. "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *Cityfed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). A court may issue an injunction "where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *Id.* Thus, preliminary injunctive relief may issue "with either a high probability of success and some injury or vice versa." *Cuomo v. United States Nuclear Regulatory Commission*, 772 F. 2d 972, 974 (D.C. Cir. 1985).

**B. There Is A Substantial Likelihood The Navigators Will Prevail On The Merits**

In this action, The Navigators appeals from an informal agency adjudication reviewable under §706 of the Administrative Procedure Act ("APA"), 5 U.S.C. §706.

Pursuant to §706 of the APA, informal agency action must be set aside "if it fails to meet statutory, procedural or constitutional requirements or if it was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...' " 5 U.S.C. § 706(2)(A); *Olenhouse v. Commodity Credit Corporation*, 42 F. 3d 1560 (10th Cir. 1994) quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 413-14 (1971). A reviewing court, in applying the "arbitrary or capricious" standard, asks whether the agency engaged in reasoned

decision making. *Clifton Power Corp. v. F.E.R.C.*, 88 F.3d 1258 (D.C. Cir. 1996); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983).

      1. <u>Defendant's Denial of The Navigators' Application Abridges Its First Amendment Rights</u>

      Charitable solicitation of federal employees through participation in the CFC is protected by the First Amendment. *Cornelius v. NAACP Legal Defense and Educational Fund*, 473 U.S. 788 (1985).

> The brief statements in the CFC literature directly advance the speaker's interest in informing readers about its existence and goals. Moreover, an employee's contribution in response to a request for funds functions as a general expression of support for the recipient and its views...[T]he CFC literature facilitates the dissemination of views and ideas by directing employees to the soliciting agency to obtain more extensive information...Finally, without the funds obtained from solicitation in various fora, the organization's continuing ability to communicate its ideas and goals may be jeopardized....Thus, the nexus between solicitation and the communication of information and advocacy of causes is present in the CFC as in other contexts.

*Id.* at 3447.

      In *NAACP Legal Defense and Educational Fund, Inc. v. Campbell*, 504 F. Supp. 1365 (1981), two charities challenged their exclusion from the CFC. The Manual on Fund-Raising Within the Federal Service for Voluntary Health and Welfare Agencies ("Manual")[6] stated that "[o]nly nonprofit, tax-exempt charitable organizations, supported by voluntary contributions from the general public and providing direct services to persons in the fields of health and welfare services are eligible for approval."

      Defendant contended the charities were not eligible to participate in the CFC because

---

[6]The Manual predated the current CFC regulations found at 5 CFR Part 950.

they served as legal advocates for groups but did not provide "direct services" to persons such as providing legal representation for individuals unable to afford the cost of retaining private attorneys.

The court found that the "direct services" requirement did not meet First Amendment standards. The term was not defined "and the term [direct services] standing alone, is too vague to comport with the strict standards of specificity required when limits are placed on First Amendment activity." *Id.* at 1367. No established standards existed that would guide the government in determining whether an organization provided "direct services." The "direct services" requirement did not have "the precision necessary to comport with constitutional requirements." *Id* at 1368.

Similarly, the requirement that eligible CFC national list participants must demonstrate they provide or conduct "real" or "actual" services, benefits, assistance or program activities is similarly vague because the terms "real" or "actual" services, benefits, assistance or program activities are not defined in the regulations. What constitutes "real" or "actual" conduct is capable of subjective determinations without the necessary specificity to permit applicants to conform their conduct to qualifying standards.

There is can be no dispute that in thirty-four states and thirteen foreign countries over a multi-year period, The Navigators provided services to thousands of individuals. The Navigators listed in Attachment A to its 2006 CFC application the states where these activities and services occurred. The Navigators provided detailed information in its application with regard to the activities described above. Yet, Defendant arbitrarily determined that The Navigators detailed description of its activities was insufficient without giving a specific reason.

Without a precise definition of how The Navigators failed to meet the regulations, The Navigators could not possibly foresee what constitutes a sufficiently "real" or "actual" service to qualify for participation in the CFC. Neither could NGF conform its actions to such imprecise standards. Because the regulations are vague as to what qualifies as "real" or "actual" benefits or services to be conducted in each of the 15 states, the regulations Defendant relied upon violate the First Amendment.

2. <u>Defendant's Denial of The Navigators' 2006 CFC Application Was Arbitrary and Capricious</u>

Under the "arbitrary or capricious" standard, the court reviews an agency's decision making process and determines whether the agency examined "the relevant data and articulate[d] a satisfactory explanation for its action *including a rational connection between the facts found and the choice made.*" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (emphasis added.); *Touris Records, Inc. v. Drug Enforcement Administration*, 259 F.3d 731 (D.C. Cir. 2001). Agency action will be set aside "if the agency relied on factors which Congress has not intended for it to consider, entirely failed to consider an important aspect of the problem, *offered an explanation for its decision that runs counter to the evidence before the agency,* or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Manufacturers,* 463 U.S. at 43 (emphasis added).

The grounds upon which the agency made its decision must be clearly articulated and a reasoned explanation for its action must appear in the record. "It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Id.* at 50. The court is required to conduct a plenary review of the record to ascertain whether the agency's

action is sustained by the record and supported by "substantial evidence." *Association of Data Processing v. Board of Governors,* 745 F. 2d 677, 683-84 (D.C. Cir. 1984). The agency's decision, therefore, must be supported by facts found in the record.

> "When the arbitrary or capricious standard is performing that function of assuring factual support, there is no *substantive* difference between what it requires and what would be required by the substantial evidence test [applicable to formal adjudication under §706(2)(E)], since it is impossible to conceive of a 'nonarbitrary' factual judgment supported only by evidence that is not substantial in the APA sense."

*Id.* at 683. (emphasis in original.)

The Director has acted without authority and in an arbitrary and capricious manner in rejecting The Navigators' application for inclusion in the 2006 CFC. In her May 4, 2006 letter, the Director rejected The Navigators' 2006 CFC application stating: the information provided "did not include sufficient information to support a claim that the organization provided or conducted real services, benefits, assistance, or program activities in 15 or more different states or a foreign country over the three-year period immediately preceding January 2006." (Exhibit B to the Complaint).

The Navigators provided extensive and detailed information about its purposes and activities to defendant in its 2006 CFC application. Services were provided for spiritual, personal, relationship and social issues with an emphasis of the military person as a whole. Education and training in spiritual, personal, financial, social and professional areas was provided using one-on-one training, group interaction, seminars, conferences, and workshops. Mentoring was provided to develop leadership capabilities and maintain a responsible lifestyle. Parenting support for mothers was provided as support for being part of the military, an unusually mobile environment. Professional mentoring was provided as career counseling to

personnel in various stages of a military career. Recreation opportunities were provided as part of an overall ministry to military personnel and families. In the last category of services, religious missions offered opportunities to participate in mission projects that were mainly community service-oriented or instructional. The Navigators demonstrated conclusively that it conducted "real services, benefits, assistance or program activities" in at least 15 states during the previous three year period. (See Exhibit A to the Complaint.)

Thus, defendant's rationale for denying The Navigators' application, *viz.*, that it failed to "clearly show the actual services, benefits, assistance or program activities provided" inexplicably ignores the detailed description of activities provided in The Navigators' Attachment A.

Numerous applications submitted by Christian Services Charities on behalf of its members that contained similar information were approved. Yet, defendant inexplicably denied The Navigators' CFC application contained identical information as submitted with regard to its 2005 CFC application, which defendant approved.

Defendant's decision, therefore, was arbitrary and capricious. The Navigators submits there is a substantial likelihood it will succeed on the merits.

**C. The Navigators Will Suffer Irreparable Injury If Preliminary Injunctive Relief Is Not Granted**

The Director will distribute the National List to LFCCS on or about July 31, 2006. See, CFC schedule attached as Exhibit F to the complaint. The issuance date of the National List for the 2006 CFC is imminent.

The LFCCs publish this list in a brochure which identifies participating nationally

eligible charities and includes a short description of their programs and purposes. The brochures provide essential information relied upon by federal employees in deciding which charities to support through direct contributions and payroll deductions.

Exclusion of The Navigators from the National List for the 2006 CFC will inflict substantial economic harm and other injuries which cannot be rectified for several reasons. The Navigators will be deprived of the exercise of its First Amendment right to communicate its message to millions of federal employees who otherwise would not have the opportunity to receive this information. Not coincidentally, The Navigators also will be precluded from seeking financial support for its cause during the 2006 CFC. The CFC is the exclusive means whereby federal employees may be solicited for charitable contributions in the workplace. See, e.g., *Planned Parenthood of Metropolitan Washington, D.C. v. Horner*, 691 F. Supp. 449 (D.D.C. 1988) (injunction was issued preventing enforcement of OPM regulation preventing a national organization and one of its affiliates from simultaneously appearing on the list of eligible organizations distributed to federal employees in their local CFCs). Moreover, given the large number of federal employees located in every state and abroad, NGF cannot solicit contributions directly from this same audience without incurring exorbitant costs.

Finally, The Navigators' cannot recover from the government the amount of contributions it will not receive as a result of the Defendant's action. In addition to the loss being difficult if not impossible to quantify, The Navigators' has no remedy at law as the result of the federal government's immunity from damages for these types of suits. See, e.g., *Woerner v. United States Small Business Administration*, 739 F. Supp. 641 (D.D.C. 1990).

The losses described herein are real, immediate and irretrievable absent preliminary

injunctive relief.

**D. Third Parties Will Not Suffer Harm If Preliminary Injunctive Relief Is Granted**

No other parties will suffer harm if the relief requested by The Navigators is granted. The list of national organizations eligible to participate in the CFC easily can be updated and revised by the Director to include The Navigators and be distributed to the local LFCCs *via* OPM's web site. The brochures have yet to be printed and distributed, so no additional expenses for reprinting the brochures need be incurred. Moreover, other eligible charitable organizations participating in the CFC will not be harmed because the 2006 CFC has yet to begin. For these reasons, no harm will occur to other parties if preliminary injunctive relief is granted.

**E. Grant of Preliminary Injunctive Relief Will Serve The Public Interest**

The public interest is undoubtedly served by The Navigators' participation in the CFC. Inclusion of The Navigators in the 2006 CFC permits millions of federal employees to learn of the organization, to receive its message, and to make donations to permit the organization to continue to carry out its charitable activities. If the requested preliminary injunctive relief is granted, The Navigators' participation in the CFC will guarantee that it may continue to provide services to military personnel and their families.

Moreover, "there is a strong public interest in meticulous compliance with law by public officials." *Fund for Animals v. Espy*, 814 F. Supp. 142, 152 (D.D.C. 1993). In the instant action, the Defendant's arbitrary denial of The Navigators' application was based on vague and imprecise standards and on reasons not supported by the record.

Therefore, the public interest will be served by granting the requested preliminary injunctive relief.

### III. CONCLUSION

For the reasons stated herein, The Navigators respectfully requests this court to order the requested preliminary injunctive relief.

Respectfully submitted,

/s/
Bernard J. DiMuro, Esq. (DC Bar #393020)
DiMuroGinsberg, P.C.
908 King Street, Suite 200
Alexandria, Virginia 22314
(703) 684-4333
(703) 548-3181 (facsimile)

Noland MacKenzie Canter, III (D.C. Bar #93616)
Mark J. Diskin (D.C. Bar #334086)
Copilevitz & Canter, LLC
1900 L Street, N.W., Suite 215
Washington, D.C. 20036

*Counsel for Plaintiff*